Hillsborough,
No. 4858.

WARREN N. P. WURM & a. v. JOHN J. REILLY, INC. & a.

Argued June 21, 1960.

Decided July 19, 1960.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (*Mr. Nassikas* orally), for the plaintiffs.

*Green, Green, Romprey & Sullivan* for John J. Reilly, Inc., Thomas F. O'Brien, sheriff, and Ovila J. Pichette, deputy sheriff, furnished no brief.

*Devine, Millimet & McDonough* and *Norman H. Stahl* (*Mr. Stahl* orally), for Lyons Iron Works, Inc., Thomas F. O'Brien and Ovila J. Pichette.

*Fisher, Parsons & Moran* (*Mr. Moran* orally), for the defendants Fred C. Assad and 32 Merrimack St., Inc.

*James M. Winston,* receiver and trustee in bankruptcy, *pro se,* furnished no brief.

DUNCAN, J. The sale which these plaintiffs seek to have set aside and decreed invalid was held on the premises in question on April 6, 1959, by public auction, pursuant to executions in favor

of the creditors John J. Reilly, Inc. and Lyons Iron Works, Inc. issued in actions brought to enforce mechanic's liens upon the premises. The notice of the sale stated that all the right, title, and interest of the defendant hotel corporation and all its "Right in Equity and Right to Redeem said Right in Equity" would be sold "subject to all prior valid liens of record . . . . " The notice further stated: "TERMS cash at time of sale. Sheriff's deed to be given within 30 days of sale."

At the sale, it was announced that a prior mortgage secured indebtedness amounting to $59,000, that a prior lien for taxes due the city of Manchester secured taxes totalling $14,613.73 plus interest and that a prior lien for federal taxes secured payment of $12,328.49 with interest. However the referee in bankruptcy, there present, announced that as filed before him the claim of the Federal Government approximated $5,000.

The record of the bidding showed an opening bid by the defendant Assad for $20,000. Thereafter bids by Assad and four other bidders, including the plaintiff Blank were received. The property was sold to the defendant Assad upon his bid of $140,000, which followed a bid by the plaintiff Blank for $139,000.

Following a conference of attorneys for the execution creditors, the deputy sheriff, and the successful bidder, the latter delivered to the deputy sheriff his personal check for $25,000 and a check of Joseph Michael Realty Corporation for $115,000. On April 7, 1959, the deputy sheriff carried the check for $25,000 to the First National Bank of Rochester, where he received a cashier's check in substitution therefor. The bank check was then deposited to the sheriff's account.

The check for $115,000 was held by the sheriff until his deed of the premises dated April 6, 1959, was delivered and recorded on April 20, 1959, when the larger check was also deposited to the sheriff's account. There was evidence that the account of Joseph Michael Realty Corporation showed a balance of $3,940.82 on April 20, 1959, a deposit of over $119,000 on April 22, 1959, and a charge against the account for $115,000 on the same date.

The plaintiffs attack the execution sale upon several grounds: first, because the requirement of cash at time of sale operated to discourage bidders; second, because the sale was not for cash; and finally upon the ground that the defendant Lyons Iron Works, Inc. has failed to preserve its mechanic's lien by proper attachment.

While it is possible that sales for cash, particularly where

substantial sums are involved, tend to discourage bidders (*Aldrich v. Wilcox*, 10 R. I. 405, 408; 3 Jones on Mortgages (8th *ed.*) 538), by the weight of authority judicial sales are required to be for cash unless the interested parties agree otherwise. We are aware of no authority in this jurisdiction for departure from the general rule. The statute specifies that the debtor's right to redeem "may be taken on execution, and . . . sold at auction" (RSA 529:19), but is silent as to the terms of such a sale. However, in the early case of *Chase* v. *Monroe*, 30 N. H. 427, 432, 433, a sheriff was held liable for the sale price of attached goods which he sold upon credit to a purchaser who was unable to pay the price when due. After pointing out that there was no agreement by the creditors to a sale upon credit the court said: "Property sold upon writs of attachment is to be disposed of in the same manner as upon execution; to wit, at auction; to the highest bidder; and, of course, for cash . . . If [the sheriff] sells on credit, it is at his own risk." See also, *Jackson* v. *Smith*, 52 N. H. 9, 12.

In the absence of evidence of any agreement upon terms other than cash, the sale in the case before us is not open to attack upon the ground that the notice improperly discouraged bidding by imposing cash terms. 3 Jones on Mortgages, *supra*, *s.* 2079. 2 Freeman on Executions, *s.* 293a; 33 C. J. S. 463, Executions, *s.* 217.

The plaintiffs argue that an execution sale is required to be for cash, and that since uncertified checks were accepted by the sheriff, the advertised terms of the sale were violated as well and that the sale should be set aside for that reason. It is suggested that acceptance of the checks was evidence of unfairness or bad faith on the part of the sheriff, who acted as trustee for the parties (*Jackson* v. *Smith*, 52 N. H. 9, *supra*); and that the sale must therefore be held void in accordance with principles set out in *Very* v. *Russell*, 65 N. H. 646. *Wheeler* v. *Slocinski*, 82 N. H. 211.

That the acceptance of checks constituted such unfairness as to vitiate the sale was not a compelled conclusion. There was evidence that the bidder offered to pay cash, but that the sheriff elected to take checks after investigation disclosed the probability that they would be honored, and the execution creditors offered no objection. In accepting the checks the sheriff rendered himself liable for their equivalent (*Chase* v. *Monroe*, 30 N. H. 427, *supra*; *Robinson* v. *Brennan*, 90 N. Y. 208, 213), but the decisive factor here is that no prejudice resulted to the parties, because the checks were collected

in full, upon delivery of the deed well in advance of the thirty days afforded under the terms of the sale. *Pomeroy* v. *Winship*, 12 Mass. 514, 521, 522. In these circumstances the decree dismissing the bill cannot be held erroneous as a matter of law. *Sheldon* v. *Pruessner*, 52 Kan. 593.

There was evidence that the plaintiff Blank stopped bidding at $139,000 because he was convinced that Assad was "not a legitimate bidder" and "the thing was phoney." The plaintiffs urge at some length that the failure of the successful bidder to pay cash upon the day of the sale confirms the opinion reached by the unsuccessful bidder, and somehow indicates that bidding was discouraged. "The cash sale terms were violated, thus deterring other bidders . . . from proceeding on a competitive basis," it is said. The argument appears to place the cart before the horse. When the plaintiff Blank concluded that Assad was not a bona fide bidder and therefore ceased bidding, there was no evidence that Assad was not prepared to pay cash, and it is not suggested that there was any secret agreement that he should not. Events which followed the sale establish that Assad was a bona fide bidder. The evidence that many of his bids raised the last previous bid by only $1,000 can hardly be found to have constituted the "artificial stifling of competition" which the plaintiffs contend occurred, much less furnish cause for setting aside a sale after the successful bid has been paid.

The record required no finding that the sale was unfairly conducted by those in charge nor do the plaintiffs claim that it was. The notice of the sale did not purport to state the nature or amounts of prior encumbrances, and it is not claimed that they were misstated at the sale. *Cf. Thompson* v. *Currier*, 70 N. H. 259, 265. The record supports the Trial Court's determination that the sale should not be set aside. *Sheldon* v. *Pruessner*, 52 Kan. 593, *supra*.

Finally we see no reason to set aside the decree of dismissal upon the ground that Lyons Iron Works, Inc. failed to properly enforce its lien. On November 3, 1958, judgment was entered for the plaintiff in the action brought by Lyons Iron Works, Inc., and it was decreed to have a mechanic's lien upon the hotel property effective as of February 28, 1957. It was not disputed that the precept of the writ directed the sheriff "especially to attach the hotel building owned by the defendant situate on the northerly side of said Merrimack Street, consisting of a five-story brick

structure with fixtures and appurtenances thereto, and also to attach the lot of land on which said structure stands, said real estate being more particularly described in deed of . . . Gould . . . to Rice-Varick Hotel Inc." (giving date and record references). The plaintiff relies upon the contention that this description of the premises was insufficient to preserve a lien thereon.

It is settled law that in order to preserve a lien by suit, the plaintiff must state in his writ the purpose of the action, describe with reasonable accuracy the property upon which the lien is claimed, and direct the officer to attach it to preserve the lien. *Ferns* v. *Company,* 81 N. H. 283; *Tolles-Bickford Co.* v. *School,* 98 N. H. 55, and cases cited.

Specifically the plaintiffs contend that the precept of the writ was defective in that it failed to describe by metes and bounds the lot upon which the hotel stands. The statute however imposes no such requirement. RSA 447:10. The lien is upon the structure for which materials or labor are furnished, and upon any right of the owner "to the lot of land on which it stands." RSA 447:2. If the building is adequately described, so that it can be identified with reasonable certainty (*Hopkins* v. *Rays,* 68 N. H. 164) and is attached pursuant to proper precept, a lien is preserved; and if the lot of land upon which the building stands is likewise attached, the lien extends to the land. See *West. Iron Wks* v. *Mont. P. & P. Co.,* 30 Mont. 550.

If the plaintiffs have any standing which entitles them in this action to attack the judgment entered in the mechanic's lien suit in November 1958, their contentions are thought to be without merit since the description of the attached *res* as stated in the precept of the writ was sufficient. See *Driscoll* v. *Floyd,* 217 Mass. 33; *Durling* v. *Gould,* 83 Me. 134; anno. 52 A. L. R. (2d) 12, 57.

*Exceptions overruled.*

All concurred.